**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**




**JOHN J. WALSH,**

**and**

**ANNABELLE WALSH**

**Case No. 2:11-cv-00174-RBS -TEM**

**Plaintiffs,**

**v.**

**WAVY BROADCASTING, LLC,**
**a Delaware limited liability company**

**and**

**LIN TELEVISION CORPORATION,**
**a Delaware corporation, d/b/a "LIN Media"**

**Defendants.**

**FINAL PRETRIAL ORDER**

In conformity with the Local Civil Rules of the United States District Court for the Eastern District of Virginia relating to pre-trial procedure, it is hereby ORDERED as follows:

## I. STIPULATION OF UNDISPUTED FACTS

1. Plaintiffs sue the defendants for defamation arising from the publication of the news broadcast and internet article appearing as Exhibits A and B, respectively, to the Complaint.
2. The Defendants disseminated the news broadcast on WAVY-TV, throughout its broadcast area, on March 31, 2010.
3. Defendants published the Internet article titled "Rental Company folds; clients out

cash" beginning March 31, 2010.

**A transcript of the televised broadcast is as follows:**

Alveta Ewell: A local rental company closed its doors leaving customers in a lurch. Atlantic Event Rentals folded in January.

Tom Schaad: And 10 On Your Side received several complaints from clients accusing the owners of taking their cash even though they knew the business would fold. 10 On Your Side's Lori Crouch tracked down the owners for answers. She joins us now with more. Lori...

Lori Crouch: Well, Tom and Alveta the former clients range from brides to event planners out hundreds of dollars. Annabelle and Jack Walsh say they're a victim of the bad economy and they lost everything trying to save their business. This is Jack and Annabelle Walsh toasting happier times. The owners of Atlantic Event Rentals built their family business with a commitment to making others' dreams come true.

Jack Walsh: "Just doing those things, being an event until mid... You know, just kind of holding hands with new caterers, new coordinators, just making sure as if you are renting to your mom that you take, you know, it had to be right."

Lori Crouch: But in 2009, they say everything went wrong. They moved into a new building. The overhead too much.

Jack Walsh: "Over the course of the year, we fell behind again with our rent doing these catch up payments so we got eviction notices."

Lori Crouch: Walsh says the couple dumped their life savings to make it work. They tried to stick it out but the bank stepped in. The equipment sold.

Boots Daugherty: "We had china, linens."

Lori Crouch: Boots Daughtery, owner of Affordable and Luxury Tents bought the Walsh's Inventory. The computers held an unwelcome surprise.

Boots Daugherty: "We realized that it was about $25,000 balance dues on bridal or brides or weddings that we were unaware of."

Lori Crouch: One of those customers event planner Ulla Capps.

Ulla Capps: "$850 is a lot of money."

Lori Crouch: She gave the Walsh's a deposit unaware weeks later the business would fold.

Ulla Capps: "If you don't have it in the first place, to give it back you shouldn't take it. It comes back to character and integrity."

Lori Crouch: Capps is not alone. 10 On Your Side has received several complaints from people out hundreds of dollars. Daugherty's company and others are stepping in to help.

Boots Daugherty: "It's say a $4,000 deposit and it's another $4,000 owed, then based on the equipment that we own and the way we can service it, we're not making a nickel."

Lori Crouch: Walsh says he believed things would get better, but now he says he's got nothing left to give.

Jack Walsh: "I don't have the money to give back to her."

Lori Crouch: Now, if you are a former Atlantic Event Rentals' customer, we have contacted several companies who are stepping in to help, Affordable and Luxury Tents, Premier Events, and Distinctive Event Rentals. Now, I spoke with the owner of all of these companies who say they have already helped several brides. I'm told they'll evaluate each client on a case-by-case basis. Now, a lot of these companies are as you heard breaking even or even taking a hit to help the Walsh's former clients. We have posted all this information and the phone numbers on our website. Just log on to WAVY.com and click on this story.

Lori Crouch, 10 On Your Side.

Tom Schaad: Character and integrity. A lot of those businesses stepping up to help, that is nice.

**A transcript of the internet article is as follows :**

An old website shows Jack and Annabelle Walsh toasting happier times. The owners of Atlantic Event Rentals built their family business with a commitment to make others' dreams come true.

"Just kind of holding hands with new caterers, new coordinators, just making sure just like you were renting to your mom it had to be right," says owner Jack Walsh.

However, in 2009, he says, everything went wrong. They moved into a new building and the overhead was too much.

"Over the course of the year, we got behind again with our rent doing these catch up payments, we got eviction notices."

Jack says the couple dumped their life savings to make it work. They tried to stick it out but the bank stepped in and sold the equipment.

Boots Daugherty, owner of Affordable and Luxury Tents bought the Walsh's inventory. The computers held an unwelcome surprise.

"We realized that there was about $25,000 balance dues on bridal, brides' weddings that we were unaware of," said Daugherty.

One of those customers: event planner Ulla Capps. The business owner gave the Walsh's an $850 deposit in January. She was unaware weeks later the business would fold.

"If you don't have it in the first place, to give it back you shouldn't take it. It comes back to character and integrity," says Capps.

Capps is not alone. WAVY.com received several complaints from people out of hundreds of dollars. Daugherty company and others are stepping in to help.

"If it's a $4,000 deposit and another $4,000 owed, then based on the equipment we own and the way we service it, we're not making a nickel. It's costing us labor and so forth.

Walsh says he believed things would get better, but now he says he's got nothing left to give.

"I don't have the money to give back to her."

If you're a former client looking for help contact: Affordable & Luxury Tents (757) 428-8368, Premier Events Inc. (757) 340-2212 or Distinctive Event Rentals (757) 420-7000.

## II. EXHIBITS

### A. PLAINTIFFS' EXHIBITS

1. **The Plaintiffs expect to offer the following exhibits at trial:**

| Exhibit | Bates Number | Dates | Description | Objection |
|---|---|---|---|---|
| 1. | WALSH514 | March 11, 2010 | Email from JoAnn Daugherty to Jack Walsh | Hearsay Reserved |
| 2. | WALSH515 | March 11, 2010 | Email from Jack Walsh to JoAnn Daugherty | |
| 3. | WALSH525 | January 21, 2010 | Email from Jack Walsh to JoAnne Daugherty | |
| 4. | WALSH820 | January 21, 2010 | Email from JoAnne Daugherty to Attorney Michael Levinson | Hearsay — Reserved |
| 5. | WALSH873 | | Disclaimer from AJW Website regarding cancellation policy | |
| 6. | WALSH118 | March 31, 2011 | CD containing ~~several~~ the broadcast~~s~~ airing story. | ~~Relevance~~ |
| | | | | |

| | | | | |
|---|---|---|---|---|
| **7.** | **WALSH118A, 118B 118C** | **March 31, 2011** | **Internet article from Broadcast** | |
| **8.** | | | **Terms and Conditions from AJW Contract (on back of contract)** | |
| **9.** | **WAVY0008** | **February 3, 2010** | **Customer Contract History Report** | **Incomplete** must be completed by 3-22-12 |

**2. <u>The Plaintiff may offer, if the need arises, the following exhibits at trial:</u>**

| **Exhibit** | **Bates Number** | **Description** | **Objection** |
|---|---|---|---|
| **10.** | **WALSH1187-WALSH1222** | **2010 Individual Tax Returns** | |
| **11.** | **WALSH1223-WALSH1254** | **2009 Individual Tax Returns** | |
| **12.** | **WALSH1255-WALSH1279** | **2008 Individual Tax Returns** | |
| **13.** | **WALSH1280-WALSH1305** | **2007 Individual Tax Returns** | |
| **14.** | **WALSH1306-WALSH1333** | **2006 Individual Tax Returns** | |
| **15.** | **WALSH1334-WALSH1357** | **2005 Individual Tax Returns** | |
| **16.** | **WALSH1358-WALSH1382** | **2004 Individual Tax Returns** | |
| **17.** | **WALSH1383-WALSH1408** | **2010 AJW Tax Returns** | |
| **18.** | **WALSH1409-WALSH1440** | **2009 AJW Tax Returns** | |
| **19.** | **WALSH1441-WALSH1473** | **2008 AJW Tax Returns** | |
| **20.** | **WALSH1474-WALSH1497** | **2007 AJW Tax Returns** | |
| **21.** | **WALSH1498-WALSH1525** | **2006 AJW Tax Returns** | |
| **22.** | **WALSH1526-WALSH1547** | **2006 AJW Tax Returns** | |
| **23.** | **WALSH1548-WALSH1567** | **2004 AJW Tax Returns** | |
| | | | |

| 24. | WALSH33 | Email | Hearsay | |
|---|---|---|---|---|
| 25. | WALSH34 | Email | Hearsay | Reserved |
| 26. | WALSH35 | Email | Hearsay | |
| 27. | WALSH36 | Email | Hearsay | |
| 28. | WALSH37 | Email | | |
| 29. | WALSH38 | Email | | |
| 30. | WALSH41-50 | Email | | |
| 31. | WALSH60 | Email | Hearsay | |
| 32. | WALSH61 | Email | Hearsay | Reserved |
| 33. | WALSH62 | Email | Hearsay | |
| 34. | WALSH63 | Email | Hearsay | |
| 35. | WALSH64 | Email | Hearsay | |
| 36. | WALSH70 | Email | | |
| 37. | WALSH71-72 | Email | | |
| 38. | WALSH73 | Email | | |
| 39. | WALSH74 | Email | Hearsay | Reserved |
| 40. | WALSH75 | Email | | |
| 41. | WALSH76 | Email | Hearsay | |
| 42. | WALSH83 | Email | Hearsay | Reserved |
| 43. | WALSH87 | Email | Hearsay | |
| 44. | WALSH88 | Email | Hearsay | |
| 45. | WALSH89 | Email | | |
| 46. | WALSH90 | Email | | |
| 47. | WALSH91-92 | Email | | |
| 48. | WALSH93-94 | Email | | |
| 49. | WALSH96 | Email | | |

| | | | |
|---|---|---|---|
| **50.** | **WALSH97** | **Email** | |
| **51.** | **WALSH98-99** | **Letter** | |
| **52.** | **WALSH100** | **Email** | **Hearsay** |
| **53.** | **WALSH106-107** | **Agreement** | **Incomplete** |
| **54.** | **WALSH108-113** | **Letter** | |
| **55.** | **WALSH114** | **Warranty Bill of Sale** | **Incomplete** |
| **56.** | **WALSH119** | **Email** | **Incomplete** |
| **57.** | **WALSH121-122** | **Email** | |
| **58.** | **WALSH122A-B** | **Email** | ~~**Unknown**~~ |
| **59.** | **WALSH132** | **Email** | |
| **60.** | **WALSH135-136** | **Google page** | **Incomplete** |
| **61.** | **WALSH137** | **Google page** | **Incomplete** |
| **62.** | **Exhibit 7** | **Jack Walsh Deposition Exhibits** | |
| **63.** | **Exhibit 9** | **Jack Walsh Deposition Exhibits** | |
| **64.** | **Exhibit 13** | **Jack Walsh Deposition Exhibits** | |
| **65.** | **Exhibit 18** | **Jack Walsh Deposition Exhibits** | |
| **66.** | **Exhibit 20** | **Jack Walsh Deposition Exhibits** | |
| **67.** | **Exhibit 28** | **Jack Walsh Deposition Exhibits** | |
| **68.** | **Exhibit 29** | **Jack Walsh Deposition Exhibits** | |
| **69.** | **Exhibit 32** | **Jack Walsh Deposition Exhibits** | |
| **70.** | **Exhibit 45** | **Jack Walsh Deposition Exhibits** | |

| 71. | Exhibit 47 | Jack Walsh Deposition Exhibits | |
|---|---|---|---|

A. **DEFENDANTS' EXHIBITS**

1. **The Defendants expect to offer the following exhibits at trial:**

| Exhibit | Bates Number | Description | Objection |
|---|---|---|---|
| 1 | WALSH 1083-1092 | SBA guaranteed loan (08/13/2004) | |
| 2 | WALSH 1063 | Correspondence w/ PNC Bank (10/25/2006) | |
| 3 | WALSH 1955-1956 | Correspondence w/ Virginia Tax Commissioner | |
| 4 | WALSH 1069 | Correspondence w/ La-Z-Boy (08/15/2007) | |
| 5 | WALSH 1034-1035 | Written Consent in Lieu of Special Meeting (09/10/2007) | |
| 6 | WALSH 1032 | Stock transfer (09/10/2007) | |
| 7 | n/a | "Annabel & Jack, Sandbridge Beach" (website posting by Keith Cephas Photography) (10/11/2007) | |
| 8 | WALSH 1672-1673 | AJW Profit and Loss Statement (2007) | |
| 9 | WALSH 1118-1127 | Email correspondence w/ PNC Bank (01/2008) | |
| 10 | WALSH 2092 | Notice of lease default (02/04/2008) | |
| 11 | WALSH 1129-1132 | Email correspondence w/ PNC Bank (02/21/2008) | |
| 12 | WALSH 1161-1163 | Correspondence from IRS (03/10/2008) | |
| 13 | WALSH 1057-1061 | Email correspondence w/ PNC Bank (09/24/2008) | |
| 14 | WALSH 2093 | Notice of lease default (10/03/2008) | |
| 15 | WALSH 1108 | Email correspondence w/ PNC Bank (11/21/2008) | |
| 16 | WALSH 2189 | Tax lien notice from RBC Bank (12/08/2008) | |
| 17 | WALSH 2110 | Notice of lease default (12/31/2008) | |

| | | | |
|---|---|---|---|
| **18** | **WALSH 1185-1186** | **IRS notice of intent to levy (01/05/2009)** | |
| **19** | **WALSH 1107** | **Email correspondence w/ PNC Bank (01/02/2009)** | |
| **20** | **WALSH 1596-1598** | **AJW Profit and Loss Statement (2008)** | |
| **21** | **WALSH 2113-2117** | **Unlawful detainer summons and related correspondence (01/20/2009)** | |
| **22** | **WALSH 2120-2124** | **Email correspondence w/ Karen Crowley (1/21-28/2009)** | |
| **23** | **WALSH 1171-1172** | **Correspondence w/ IRS (02/13/2009)** | |
| **24** | **WALSH 1105-1106** | **Email correspondence w/ PNC Bank (02/17/2009)** | |
| **25** | **WALSH 1067-1068** | **Correspondence w/ SBA (02/18/2009)** | |
| **26** | **WALSH 1680** | **Email correspondence from Roland Davis (06/11/2009)** | |
| **27** | **WALSH 2266** | **Correspondence from Christopher Newport Univ. (07/07/2009)** | |
| **28** | **WALSH 1081-1082** | **Notice of loan default (08/19/2009)** | |
| **29** | **WALSH 317-321** | **AJW Enterprises, Inc. RBC bank statement (03/2009)** | |
| **30** | **WALSH 161-166** | **Walsh RBC bank statement (04/23 through 5/22/2009)** | |
| **31** | **WALSH 1098-1099** | **Email correspondence w/ PNC Bank (01/04/2010)** | |
| **32** | **WAVY 407** | **AJW Daily Sales Report (01/04/2010)** | |
| **33** | **WALSH 037-038** | **Email correspondence w/ Michael Levinson (01/15/2010)** | |
| **34** | **WAVY 288** | **AJW Daily Sales Report (01/15/2010)** | |
| **35** | **WALSH 066-067** | **Correspondence w/ Doughertys (01/21/2010)** | |
| **36** | **WAVY 327** | **AJW Daily Sales Report (01/21/2010)** | |
| **37** | **WALSH 2623** | **Handwritten Notes (01/27/2010)** | |

| | | | |
|---|---|---|---|
| 38 | WALSH 1096-1099 | Email correspondence w/ PNC Bank (01/27/2010) | |
| 39 | WALSH 041-050 | Email correspondence w/ Michael Levinson (01/28/2010) | |
| 40 | WALSH 750-751 | Email correspondence w/ Levinson (01/28/2010) | |
| 41 | WALSH 694-700 | Peaceful Possession Agreement (01/29/2010) | |
| 42 | WALSH 709 | Bill of Sale | |
| 43 | WALSH 1569 | Annabelle Walsh letter | |
| 44 | WAVY 004-009 | Atlantic Event RentalsAtlantic Event RentalsAtlantic Event Rentals Customer Contract History Report (02/03/2010) | |
| 45 | WAVY 608-609 | Email correspondence w/ Lance Lavenstein (02/06/2010) | |
| 46 | WALSH 091-092 | Email correspondence w/ Joann Dougherty (03/11/2010) | |
| 47 | WAVY 457-458 | Sandy Lam email correspondence w/ WAVY (03/18/2010) | ~~Hearsay;~~ Authentification — Reserved |
| 48 | WAVY 449-450 | Ulla Capps email correspondence w/ WAVY (03/30/2010) | |
| 49 | n/a | Television broadcast (03/31/2010)(DVD format) | |
| 50 | n/a | Website article (04/01/2010)(paper format) | |
| 51 | WALSH 098-099 | Correspondence w/ Affordable Tent Company (03/31/2010) | |
| 52 | WALSH 119-120 | Annabelle Walsh email (04/12/2010) | |

2. The Defendants may offer the following exhibits at trial:

| Exhibit | Description | Bates Nos. | Objection |
|---|---|---|---|
| 53 | 2004 joint tax return (Jack and Annabelle Walsh), | WALSH 1363-1365 | |
| 54 | 2005 joint tax return (Jack and Annabelle Walsh) | WALSH 1334-1357 | |

| | | | |
|---|---|---|---|
| **55** | **2005 tax return (AJW Enterprises, Inc.)** | **WALSH 1526-1547** | |
| **56** | **Correspondence from Christopher Newport Univ. (07/16/2009)** | **WALSH 2261** | |
| **57** | **AJW Daily Sales Report (01/05/2010)** | **WAVY 418** | |
| **58** | **AJW Daily Sales Report (01/07/2010)** | **WAVY 207** | |
| **59** | **AJW Daily Sales Report (01/11/2010)** | **WAVY 249** | |
| **60** | **AJW Daily Sales Report (01/14/2010)** | **WAVY 302** | |
| **61** | **AJW Daily Sales Report (01/20/2010)** | **WALSH 337** | |
| **62** | **AJW Daily Sales Report (01/23/2010)** | **WAVY 401** | |
| **63** | **Email correspondence w/ Joann Dougherty (01/29/2010)** | **WALSH 061** | |
| **64** | **Email correspondence w/ Scott Steward (02/24/2010)** | **WALSH 073** | |
| **65** | **Email correspondence w/ Scott Steward (02/25/2010)** | **WALSH 071-072** | |
| **66** | **Email correspondence w/ Scott Steward (03/11/2010)** | **WALSH 093-095** | |
| **67** | **Email correspondence w/ Scott Steward (03/17/2010)** | **WALSH 132** | |
| **68** | **PNC Complaint (07/13/2010)** | **WALSH 426-453** | |
| **69** | **Judgment Order (03/16/2011)** | **WALSH 463-464** | |
| **70** | **RBC monthly checking account statements for AJW Enterprises, Inc. (January 2009 through January 2010)** | **n/a** | |

| 71 | **RBC monthly checking account statements for John and Annabelle Walsh (January 2009 through January 2010)** | **n/a** | |
|---|---|---|---|

## III. WITNESSES:

### A. Plaintiffs' Witnesses:

1. Expects to Call

| | Witnesses | Defendant's Objection |
|---|---|---|
| (1.) | Jack Walsh<br>900 Walnut Neck Circle<br>Chesapeake, VA 23320 | None |
| (2.) | Annabelle Walsh<br>900 Walnut Neck Circle<br>Chesapeake, VA 23320 | None |
| (3.) | Cathy Carter<br>2514 East Ocean View Avenue<br>Norfolk, VA 23518 | None |
| (4.) | Maya Warburton<br>4273 Llewellyn Avenue<br>Norfolk, VA 23504 | None |
| (5.) | Michael Levinson<br>303 34th Street<br>Virginia Beach, VA 23451 | None |
| (6.) | Malissa Murphy<br>457 Baldwin Street<br>Virginia Beach, VA 23452 | None |
| (7.) | Patti Ritzi<br>2509 Locust Grove Lane<br>Virginia Beach, VA 23456 | None |
| (8.) | Christopher Amores<br>1015 West King Street<br>Martinsburg, WV 25401 | None |

| | Witnesses | Defendant's Objection |
|---|---|---|
| (9.) | JoMarie Bohn<br>307 Viola Road<br>Charleston, WV 25314 | None |
| (10.) | Angelynne Amores<br>21 Kristin Drive, Apt. 601<br>Schaumburg, IL 60195 | None |
| (11.) | Peter Chiusano<br>3012 Watergate Lane<br>Virginia Beach, VA 23452 | None |
| (12.) | Norma Freesmeier<br>4935 Admiration Drive<br>Virginia Beach, VA 23464 | None |
| (13.) | Deborah Davis<br>2505 Sanderson Lane<br>Virginia Beach, VA 23456 | None |
| (14.) | Kevin Scott Steward<br>709 Walton Drive<br>Virginia Beach, VA 23464 | None |
| (15.) | Bill Cabell<br>1111 International Plaza<br>Chesapeake, VA 23323 | None |
| (16.) | Jeffrey Myers<br>c/o Wavy Broadcasting, LLC<br>300 Wavy Street<br>Portsmouth, VA | None |
| (17.) | Jennifer Lalonde-Schumacher<br>2344 Wind Pine Bend Virginia Beach, VA 23456 | None |
| (18.) | All witnesses identified by defendants. | None |

**2. <u>May Call</u>**

| | **Witnesses** | **Defendant's Objection** |
|---|---|---|
| | | |

| | **Witnesses** | **Defendant's Objection** |
|---|---|---|
| (19.) | David DesRoches, CPA<br>200 Golden Oak Court<br>Reflections II, Suite 200<br>Virginia Beach, VA 23452 | Rebuttal only. See Court Order dated March 5, 2012 |
| (20.) | Karen Crowley, Esq.<br>Town Point Center, Suite 300<br>150 Boush Street<br>Norfolk, VA 23510 | Rebuttal only. See Court Order dated March 5, 2012 |
| (21.) | JoAnn Daugherty<br>545 S. Birdneck Rd., Suite 117<br>Virginia Beach, VA 23451<br><br>(per Plaintiff's Rule 26(a)(3) amendment, 11/17/2011) | Rebuttal only. See Court Order dated March 5, 2012 |
| (22.) | Guy Daugherty<br>545 S. Birdneck Rd., Suite 117<br>Virginia Beach, VA 23451<br><br>(per Plaintiff's Rule 26(a)(3) amendment, 11/17/2011) | Rebuttal only. See Court Order dated March 5, 2012 |

**3. By Deposition**

| | **Witnesses** | **Defendant's Objection** |
|---|---|---|
| (23.) | Angelynne Amores<br>21 Kristin Drive, Apt. 601<br>Schaumburg, IL 60195<br>Entire Deposition Designated | None |

**4. Expert witnesses:**

**None.**

**B. Defendants' Witnesses:**

**1. Expects to Call**

| | **Witnesses** | **Plaintiff's Objection** |
|---|---|---|
| | | |

| | Witnesses | Plaintiff's Objection |
|---|---|---|
| (1.) | Mr. John J. Walsh | None |
| (2.) | Mrs. Annabelle Walsh | None |
| (3.) | Ms. Lori Crouch | None |
| (4.) | Ms. Jamie Bastas | None |
| (5.) | Mr. Doug Davis | None |
| (6.) | Ms. Ulla Capps | None |

**2. <u>May Call</u>**

| | Witness | Plaintiff's Objection |
|---|---|---|
| (7.) | Mr. Chris Omahen | None |
| (8.) | Mr. Robert Rizzo | None |
| (9.) | Ms. Maya Warburton | None |
| (10.) | Ms. Jennifer L. Schumacher | None |
| (11.) | Ms. Deborah Davis | None |
| (12.) | Mr. Peter Chiusano | None |
| (13.) | Ms. Patricia Chiusano | None |
| (14.) | Mr. Michael Levinson | None |
| (15.) | Mr. Scott Steward | None |

**3. <u>By Deposition</u>**

| | Witness | Plaintiffs' Objection |
|---|---|---|
| (16.) | Mr. John J. Walsh | Plaintiffs object to the use of depositions in trial as exhibits or otherwise, except for impeachment by prior inconsistent statement, or in strict conformance with Fed. R. Civ. P. Rule 32. |

| | Witness | Plaintiffs' Objection |
|---|---|---|
| (17.) | Mrs. Annabelle Walsh | Plaintiffs object to the use of depositions in trial as exhibits or otherwise, except for impeachment by prior inconsistent statement, or in strict conformance with Fed. R. Civ. P. Rule 32. |
| (18.) | Defendants reserve the right to present by deposition the testimony of any witness who has given a deposition in this civil action for any purpose, where necessary and permitted under Fed. R. Civ. P. 32(a). | Plaintiffs object to the use of depositions in trial as exhibits or otherwise, except for impeachment by prior inconsistent statement, or in strict conformance with Fed. R. Civ. P. Rule 32. |

**4. Expert witnesses:**

**None.**

## IV. FACTUAL CONTENTIONS:

### A. The factual contentions of the Plaintiff are as follows:

1. The defendants operate the television channel known as WAVY-10, sometimes referred to as "10 On Your Side," both referred to jointly herein as "WAVY."

2. On March 30, 2010 WAVY's reporter, Lori Crouch, materialized on the Walshes' doorstep, unannounced, accompanied by a cameraman pointing his lens across Crouch's shoulder into Mrs. Walsh's face, as Mrs. Walsh came to her front door, which had been answered by her young daughter. Crouch's first words were, "Is it true that you've taken clients' monies knowing that you were going to go out of business?" or words to that effect. Mrs. Walsh responded that the statement was not true, Mrs. Walsh allowed Crouch into her living room without the cameraman,

where Crouch briefly interviewed the Walshes off-camera. Jack Walsh agreed to a more extended interview the following day.

3. On March 31, 2010, for approximately half an hour, Crouch conducted an audio-video taped interview of Jack Walsh, during which Jack Walsh told Crouch that Boots and JoAnn Daugherty had been made aware of the deposits and had agreed to perform those and other contracts:

4. WAVY edited out and later deleted from the disk containing the recorded interview of Jack Walsh conducted on March 31, 2010, everything except what was shown on T.V. Thus, Jack Walsh's recorded statements to Crouch that the Daughertys were aware of and had agreed to honor the deposits were destroyed by WAVY.

5. Later on the evening of March 31, 2010, the news broadcast that is the subject of this lawsuit conveyed several false statements, directly and impliedly, as follows:

(1) The broadcast stated that Lori Crouch "tracked down" the Walshes, implying that the Walshes had to be hunted down like human prey to be interviewed;

(2) The broadcast quotes Boots Daugherty as saying the deposits were "an unwelcome surprise . . .," and that "there was about $25,000 balance dues [sic] on bridal or brides or weddings that we were unaware of." However, Jack and Annabelle Walsh's denials of that statement did not appear anywhere in the broadcast.

(3) The broadcast falsely suggested the Walshes had bilked Ulla Capps. In fact, Ulla Capps cancelled her contract for reasons of her own, thereby forfeiting her $850 deposit. Ulla Capps' loss of her deposit had nothing

whatever to do with the Walshes' cash flow; it was a function of the non-refundable contract she signed. Further, Capps had specifically informed WAVY that she, not the Walshes, cancelled her contract.

(4) WAVY's Tom Schaad concluded the broadcast with the statement, "Character and integrity. A lot of these businesses stepping up to help, that is nice." The foregoing statement disparaged the Walshes' reputation, implying that the Walshes lacked character and integrity, and did nothing to "step up to help" the bridal customers. Tom Schaad's statement and the news broadcast, as a whole, also failed to acknowledge that the three named companies that were "stepping up to help" were companies the Walshes had lined up to honor the contracts.

6. On March 31, 2010, WAVY also published an online news article and that conveyed substantially the same false statements as alleged above:

7. WAVY acted in reckless disregard of the falsity of the above described statements after having been put on notice that the statements were false. In publishing and/or broadcasting the above false statements, WAVY acted with willful and wanton disregard as to the Walshes' reputation and rights.

8. The defamatory statements in the broadcast and article have caused, are causing, and will cause Jack and/or Annabelle Walsh injury to his/her reputation, good name, and have held, and will hold, him/her up to public scandal and/or ridicule, and have caused, are causing, and will cause him/her embarrassment, humiliation and mental suffering. The statements were calculated to, and do, hold Jack and/or Annabelle Walsh up to public scorn, hatred, and ridicule. By such publication,

WAVY did injure Jack and/or Annabelle Walsh's reputation and good standing in the community, and proximately caused Jack and/or Annabelle Walsh to lose future income.

9. The defamatory statements in the broadcast and article impute unfitness to perform duties of office and employment for profit and want of integrity in the discharge of duties of such office and employment for profit on account of dishonesty in business and the commission of a criminal offense. The statements, individually and taken together as a whole, prejudice Jack and/or Annabelle Walsh personally and in his/her profession, tending to injure him/her in his/her employment and profession, and cast him/her as being particularly unfit to be an event planner or an owner or operator of an event planning business or any other kind of business.

**B. The factual contentions of the Defendant are as follows:**

1) Defendants operate a broadcast television station, WAVY-TV Channel 10 in Portsmouth, Virginia ("WAVY") which broadcasts in the Tidewater, Virginia area.

2) Defendants own and provide content to a website at www.fox43tv.com.

3) WAVY is a franchisee of the "On Your Side" consumer affairs brand, which reports from time to time on consumer complaints and engages in an effort, where possible, to resolve such complaints.

4) In late March, 2010, WAVY became aware through several email messages that local residents were encountering problems with Atlantic Event Rentals, a local rental company that, according to the complaints, had gone out of business while holding rental deposits.

5) WAVY assigned reporter Lori Crouch to investigate the consumer complaints about Atlantic Event Rentals.

6) As part of her investigation, Crouch interviewed the owners of Atlantic Event Rentals, Jack and Annabelle Walsh. Jack and Annabelle Walsh had been the sole owners of AJW Enterprises Inc., which did business until early 2010 as Atlantic Event Rentals.

7) Crouch interviewed Jack and Annabelle Walsh at their home on or about March 30, 2010. Crouch interviewed Jack Walsh on March 31, 2010. Part of the Jack Walsh interview was recorded on camera.

8) As part of her investigation of the story, Crouch also conducted on camera interviews of Ulla Capps, a complaining Atlantic Event Rentals customer, and Guy "Boots" Daugherty, the owner of Affordable and Luxury Tents. Affordable and Luxury Tents had purchased certain tangible assets of AJW Enterprises d/b/a Atlantic Event Rentals in late January 2010. Crouch also conducted telephone interviews of persons in the local special event rental business.

9) Crouch worked with a WAVY cameraman to edit the audio and video materials gathered during her investigation. The resulting story ("Broadcast") was broadcast on March 31, 2010.

10) Crouch also prepared the text of a story titled "Rental Company Folds; Clients Out Cash" ("Website Article") that appeared on the *fox43tv* website.

11) The Broadcast and the Website Article are attached as exhibits to the complaint. The content of both speaks for itself. In sum and substance, it is the story of a business failure and of the consequences for customers who were not informed

when they were making rental contracts that Atlantic Event Rentals would not have the ability to perform the contracts. The story explained that certain local companies were stepping in to help and gave contact information for those companies.

12) The four passages in the Broadcast and the Website Article that the Walshes complained about do not convey messages that are both false statements of fact and injurious to reputation.

1. The term "tracked down" is a colloquial expression that conveys no defamatory meaning, directly or by inference. Its use by WAVY does not have the extreme meaning assigned to it by the Walshes.

2. The reference to finding "an unwelcome surprise" on the Atlantic Event Rentals computers, coupled with Boots Daugherty's statement that "there was about $25,000 balance dues on bridal, bride's weddings that we were unaware of," taken in full context, are an insignificant aspect of the story and are unrelated to any defamatory sting that the story may have delivered. The Walshes admit that they took $19,000 in deposits during the final weeks of operating Atlantic Event Rentals, at a time when they were fully aware Atlantic Event Rentals could not perform the contracts. The Walshes admit that they never conveyed the deposits to Boots Daugherty's company, or to any other company. Thus, even if Boots Daugherty had been quoted by WAVY as saying "I know all about Atlantic Event Rentals taking $19,000 in deposits" it would not change the fundamental meaning of the Broadcast or the Website Article.

3. Ulla Capps made a deposit with Atlantic Event Rentals at a time Atlantic Event Rentals knew it could not perform the contract, and Atlantic Event Rentals failed to tell her that. Ulla Capps offered her opinion, based on those disclosed facts, that it was a reflection on the "character and integrity" of Atlantic Event Rentals' owners to take money under the pretext that Atlantic Event Rentals could perform her contract at a later date. Had she known Atlantic Event Rentals would soon sell the equipment she was renting, she would never have given Atlantic Event Rentals a deposit. The fact that she later cancelled her contract does not negate the fact that she paid a deposit without being fully informed by Atlantic Event Rentals of the true facts.

4. WAVY anchor Tom Schaads' statement concerning "character and integrity – a lot of these businesses stepping up to help, that is nice" is a clear reference to the businesses that are stepping up to help customers, not to the Walshes. Moreover, it is a statement of the same opinion voiced by Ms. Capps in the story.

13) Any injury to reputation associated with the Broadcast or the Website Article flows from the substantially true information conveyed by those stories. The Walshes went out of business and John J. Walsh gave his explanation of why Atlantic Event Rentals went out of business in the story. The Walshes in fact took deposits for rentals from customers for several weeks while they had the knowledge the rental assets would soon be sold. They did not tell all of their customers that the customers were putting down deposits for rental property the Walshes would not

control at the time the contracts were to be performed. This created problems with at least some customers, one of whom, Ulla Capps, voiced her opinion about this situation. All of these facts were true and accurately reported.

14) The Walshes suffered injury to reputation, embarrassment, humiliation, and mental distress as a direct and proximate cause of the failure of their business and the surrounding facts and circumstances.

15) The Walshes had been under severe pressure for years. They formed AJW Enterprises Inc. and purchased the rental business in August 2004. They learned at or about the time they purchased the business that it suffered from a poor reputation. They learned that they needed to make unanticipated expenditures to upgrade the quality of the rental inventory and the company's vehicles. In order to buy the company they took out an $860,000 SBA- backed loan from PNC Bank in 2004 and soon thereafter a $100,000 loan from PNC Bank, also backed by the SBA, for working capital. Within a few years both loans were in default. They had been under pressure from landlords for failure to pay rent, and were ultimately forced out of their leased space in Fall 2009. They borrowed money from Mrs. Walsh's family to keep the business afloat. They were negotiating with the IRS and the Commonwealth of Virginia to deal with unpaid taxes. By January 2010 they were facing the forced sale of substantially all of their tangible assets by PNC Bank, including all of the rental property and equipment that AJW Enterprises, Inc. d/b/a Atlantic Event Rentals controlled.

16) While they struggled for years to keep their business afloat, the Walshes maintained with their friends and business associates the outward appearance and trappings of financial success.

17) At some point in early 2010, approximately February 1, the Walshes became employees of Affordable and Luxury Tents, the company that had purchased the rental inventory of Atlantic Event Rentals in January 2010. Their employment lasted a few weeks.

18) The Walshes were exhausted and embarrassed by their business failure. That failure was complete at least one month before WAVY became aware of the story from complaining customers, and was the direct and proximate cause of any embarrassment, humiliation, or mental suffering experienced by the Walshes.

## V. TRIABLE ISSUES OF EACH PARTY:

### A. Plaintiff's Statement of Triable Issues:

1. Whether WAVY and its agent employees, Lori Crouch and Tom Schaad, acted within the scope of their employment.

2. Whether the broadcast or Internet article published by the defendants on March 31, 2010 was of and concerning the plaintiffs.

3. Whether the broadcast or Internet article, was capable of defamatory meaning. as set forth in paragraph 5 of TT's factual Contention

4. Whether the broadcast or Internet article, taken in its plain and natural meaning, contained provably false factual connotations. as set forth in paragraph 5 of TT's factual Contention,

5. Whether statements in the broadcast or Internet article, taken in their plain and natural meaning, read in view of the context of the entire article, (a) are false, or (b) imply, infer, or insinuate a false statement about the plaintiffs.

6. Whether the broadcast or Internet article injured the reputation of the plaintiffs or either of them.

**B. Defendant's Statement of Triable Issues:**

1. Whether the words "tracked down," in the context of the broadcast and the website article, taken as a whole, are defamatory.

2. Whether the following passage is an insubstantial aspect of the broadcast and the website article, unrelated to any defamatory "gist" or "sting" of the stories as reported: "Boots Daugherty, owner of Affordable and Luxury Tents bought the Walshes' inventory. The computers held an unwelcome surprise. 'We realized that there was about $25,000 balance dues on bridal, brides' weddings that we were unaware of,' said Daugherty."

3. Whether the following passage, were it replaced with precisely the information plaintiffs claim is true, would alter the meaning of the broadcast or the website article: "Boots Daugherty, owner of Affordable and Luxury Tents bought the Walshes' inventory. The computers held an unwelcome surprise. 'We realized that there was about $25,000 balance dues on bridal, brides' weddings that we were unaware of,' said Daugherty."

4. Whether the following passage concerning Ulla Capps is a statement of fact or a viewpoint based statement reflecting Capps's opinion about facts disclosed in the story: "One of those customers, event planner Ulla Capps. The business owner gave the Walshes an $850 deposit in January. She was unaware weeks later the business would fold. 'If you don't have it in the first place to give it back you shouldn't take it. It comes back to character and integrity' says Capps."

5. Whether the following passage, stated by anchor person Tom Schaad, is of or concerning either Jack Walsh or Annabelle Walsh: "Character and integrity. A lot of those businesses stepping up to help, that is nice."

6. Whether the following passage, stated by anchor person Tom Schaad, is a statement of fact or a viewpoint-based statement reflecting the sentiment expressed in the story by Ulla Capps: "Character and integrity. A lot of those businesses stepping up to help, that is nice."

7. Whether WAVY personnel failed to exercise reasonable care in the investigation, preparation or publication of the Broadcast or the Website Article.

8. Whether the Broadcast or the Website Article were the proximate cause of any injury to reputation suffered by plaintiffs.

9. Whether any injury to reputation suffered by plaintiffs flowed from any substantially false and defamatory message conveyed by the Broadcast or the Website Article, or instead from substantially true facts that delivered the core message of the story.

ENTERED: March 16, 2012

JUDGE

WE ASK FOR THIS:

Jeremiah A. Denton III, Esq.
VSB #19191
Vivile R. Dietrich, Esq.
VSB #72893
Rhiannon M. Jordan, Esq.
VSB #78650
Jeremiah A. Denton III, P.C.
477 Viking Drive, Suite 100
Virginia Beach, VA 23452
Tel. 757/340-3232
Fax. 757/340-4505
jerry@jeremiahdenton.com
viv@jeremiahdenton.com
rhiannon@jeremiahdenton.com
*Attorneys for Plaintiffs,*
*John J. Walsh and Annabelle Walsh*

Craig T. Merritt, Esq. (VSB #20281)
Roman Lifson (VSB #43714)
David B. Lacy (VSB #71177)
Christian & Barton, L.L.P.
909 East Main Street, Suite 1200
Richmond, VA 23219
Tel.: (804) 697-4100
Fax: (804) 697-4112
E-mail: cmerritt@cblaw.com
E-mail: rlifson@cblaw.com
E-mail: dlacy@cblaw.com
*Attorneys for Defendants,*
*WAVY Broadcasting, LLC and*
*LIN Television Corporation*